**BARIC LAW, P.C.**
STEVEN D. BARIC, ESQ. (SBN 200066)
3636 Birch Street, Suite 270
Newport Beach, CA 92660
P: (949) 633-7215
F: (949) 861-9004
E: sbaric@bariclaw.com

Attorneys for Plaintiff,
ISA BAHU

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISA BAHU, an individual,<br><br>     Plaintiff\Petitioner,<br><br>vs.<br><br>TODD AMENT, an individual, the CITY OF ANAHEIM, a California Municipal Corporation; and DOES 1 to 100, inclusive,<br><br>     Defendants\Respondents. | CASE NO.: 8:24-cv-00910<br>*Assigned to*<br>Dept:<br><br>**VERIFIED COMPLAINT FOR VIOLATION OF 1ST AMENDMENT RIGHT TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES AND PETITION FOR WRIT OF MANDAMUS AND DECLARATORY RELIEF (CCP§1085) FOR VIOLATIONS OF CALIFORNIA GOV CODE § 65010 AND THE RALPH M. BROWN ACT (CALIFORNIA GOVERNMENT CODE §54960 *et seq.*)**<br><br>**[DEMAND FOR JURY TRIAL]** |

COMES NOW Plaintiff ISA BAHU (hereinafter "Plaintiff" or "Mr. Bahu") hereby submit this Petition\Complaint (hereinafter "Complaint") pursuant to 42 U.S.C. §§ 1983, 1985(3), California Government Code §§ 911, 54960 et. seq., California Civil Code § 335 et. seq., original federal question and supplemental jurisdiction, and therefore alleges against Defendants TODD AMENT (hereinafter "Ament" or "Mr. Ament"); the CITY OF ANAHEIM (hereinafter, the "City of Anaheim," or "Anaheim"); and DOES 1 to 100, inclusive (collectively "Defendants"), and each of them, as follows:

## I.    **INTRODUCTION**

1.    This action to recover damages on behalf of Mr. Bahu, is governed by 42 U.S.C. §§ 1983 and 1985(3), Code of Civil Procedure sections 312, 338, and 342, and California Government Code §§ 911 et. seq., and the 1st Amendment of the Federal Constitution.

2.    This is a case relating to the recently exposed endemic corruption within Orange County municipal corporations that have enabled a den of vampiric fat cats that have used increasingly sophisticated methods to usurp the municipal apparatus for their own pecuniary gain. Former members of the City Council and the Mayor's Office have sold their votes, influence, contracts, voice, and have conspired with Mr. Ament to both attempt to extort money from Mr. Bahu and to maintain an illegal monopoly interest through the municipal machinery.

3.    Former Mayor Harry Sidhu and former members of the City Council of Anaheim have, until recently, exercised overwhelming control over most, if not all, municipal decision-making bodies, financial committees, and the Planning Commission. Defendants have covered up information, concealed and destroyed evidence, silenced and intimidated witnesses, and have managed to do so under the color of California State law. As such, most, if not all, information relevant to the prosecution of Mr. Bahu's case at bar could not have been ascertained through a reasonably diligent search at the time these events transpired.

2

VERIFIED COMPLAINT FOR VIOLATION OF 1ST AMENDMENT RIGHT TO PETITION
THE GOVERNMENT FOR REDRESS OF GRIEVANCES AND PETITION FOR WRIT OF MANDAMUS

4.      It was not until the full weight of the Federal Bureau of Investigations (hereinafter "FBI") and the City of Anaheim conducted and chartered, respectively, their own investigations and made the results of those investigations public on July 24, 2023, did Mr. Bahu ascertain the necessary information to suspect that a cause of action for violations of his Federal rights under the Constitution were viable and immediately sought relief therefor. In fact, many Anaheim employees that were interviewed for the investigations voiced their concerns over possible retaliation in response to their participation.[1] Despite the incredible effort to discover the basis for his failure to secure a conditional use permit, Mr. Bahu could not find any untoward basis for his denial until the results of these investigations were made public.

5.      The ongoing economic damages Mr. Bahu continues to suffer is a direct and proximate result of the custom and policies of Anaheim, created and perpetuated in a civil conspiracy for personal financial gain by former Anaheim City Mayor Harry Sidhu (hereinafter "Mayor Sidhu") and other elected city officials, acting in concert with back-alley lobbyist and corporate-policy fixer Todd Ament.

6.      Pursuant to Code of Civil Procedure §§ 1060, 1085, Plaintiff\Petitioner Isa Bahu seeks a writ of mandamus overturning the decision of the City Council to deny Mr. Bahu an unbiased hearing in consideration and appeal of the conditional use permit previously granted. Furthermore, Mr. Bahu seeks a declaratory judgment clarifying his rights, duties, and obligations relating to the terms of the conditional use permit that the City of Anaheim ultimately upholds.

## II.    **JURISDICTION AND VENUE**

5.      Jurisdiction is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4) et seq.

---

[1] JL Group Administrative Investigation Report of Findings in the Matter of The City of Anaheim Investigation, published July 31, 2023.  (hereinafter "JL"), at pg. 3.

6.      This Court has supplemental jurisdiction over all asserted state law claims pursuant to 28 U.S.C. § 1367 because all state law claims are so related to, and arise from, the same common nucleus of operative facts from which the federal claims arise and, therefore, they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to the claims occurred in this District. Additionally, Defendants TODD AMENT and the CITY OF ANAHEIM, both primarily conduct business in California, specifically and including the county of Orange.

## III.   **PARTIES**

8.      Petitioner\Plaintiff ISA BAHU (hereinafter "Mr. Bahu" or "PLAINTIFF") is the applicant for a conditional use permit concerning the lot located on the southeast corner of Imperial Highway and La Palma Avenue, at the address commonly referred to as 5706 East La Palma Avenue, Anaheim, California 92807. Mr. Bahu is an adult currently residing in the city of Anaheim, county of Orange, state of California.

9.      Defendant\Respondent CITY OF ANAHEIM (hereinafter "City of Anaheim" or "Anaheim") is a California municipal corporation in the county of Orange, in the state of California.

10.     Defendant\Respondent TODD AMENT (hereinafter "Ament" or "Mr. Ament") is an adult individual residing in the county of Orange, state of California.

11.     The true names, identities, or capacities, whether individual, associate, corporate, governmental, or otherwise, of Defendants DOES 1 through 100, inclusive, are unknown to PLAINTIFF at this time, and PLAINTIFF therefore sues Defendants by such fictitious names pursuant to *California Code of Civil Procedure* Section 474. When the true names, identities, or capacities of such fictitiously designated Defendants are ascertained, PLAINTIFF will amend this Complaint to insert said names, identities, capacities, together with the proper charging allegations. PLAINTIFF is informed and believes, and thereon alleges each of the Defendants designated herein as a DOE was negligent and guilty of the

same conduct as the other Defendants, is responsible in some manner for the events and happenings herein referred to, and their negligence proximately caused the injuries and damages sustained by PLAINTIFF as herein alleged, either through such DOE'S own negligent conduct, participation, ancillary or otherwise, through the conduct of their agents, servants, employees, or due to their ownership, control, rental, use, sale, design, maintenance, repair, construction, manufacture, or lease of the property or instrumentality by which PLAINTIFF'S injuries were caused, or in some other manner.

## IV.   FACTUAL BACKGROUND

### A.   Ament Sold Votes and Influence on the Anaheim City Council for Years

**a.   Ament and Harry Sidhu formed "the Family" to create a pervasive apparatus of "like-minded control" among the varied municipal decision-makers to vastly enrich themselves through public contracts, developments, grants, and endowments.**

12.     Starting in 2004, Harry Sidhu (hereinafter, former "Mayor Sidhu" or "Sidhu") was elected to the City Council for the City of Anaheim, in 2008, and again in 2016. In 2018, Sidhu successfully ran for mayor against Ashleigh Aitken, narrowly defeating her by a mere 478 votes. As a local official, and upon his successful bid to Mayor, Sidhu exploited Anaheim's weaknesses against lobbyists and special interest group influence over City Council decisions for his own personal financial gain. Sidhu built a network of crony henchmen within Anaheim's ranks that consisted of city staff, elected officials, shady businessmen, lobbyists, and special interests within the city itself.

13.     In the years leading up to Sidhu's mayorship, Sidhu served on the City Council and used Ament as his political "fixer," where Ament would bring in potential clients to develop and lease city properties like the property at 30 Carl Karcher Way.[2] Ament acted as a gatekeeper to former Mayor Sidhu and other elected officials where he

---

[2] JL Group Administrative Investigation Report of Findings in the Matter of The City of Anaheim Investigation, (hereinafter "JL"), at pg. 9; JL at pg. 267.

would demand some sort of payment before arranging any meetings.[3] Ament would attempt to position the Anaheim Chamber, and later Anaheim First, in between the City of Anaheim and potential clients as a means of generating "commissions" for "business development."[4] Former Anaheim City Manager Chris Zapata (hereinafter "Zapata") was quoted as saying, "The Mayor had called business meetings and said to them, 'if you want to get to me and talk to me about issues and opportunities and challenges, you have to go through Todd, he's my advisor."[5] He added that whenever someone had an issue that needed to be brought before the Mayor and the majority on Council, "Ament would get paid, and beyond his Chamber salary."[6]

14.     On or about August 15, 2017, Anaheim became soft on lobbyist activities within the city when it passed the Ordinance No. 6417 ("Sunshine Ordinance") to "increase transparency in government operations and establish lobbyist registration, reporting, and disclosure requirements and prohibitions on the employment of lobbyists.[7] However, on September 20, 2017, Mike Lyster, Chief Communications Officer for the City of Anaheim acknowledged that enforcement of the Sunshine Ordinance would largely be "self-reported."[8] Mr. Lyster Stated, "The city attorney will not be proactively questioning whether certain city employees and contractors are in compliance with the law. Instead, council members or city commissioners can request the city clerk to determine whether someone is a lobbyist and needs to register."[9] There is no mechanism requiring Anaheim officials to report when they are lobbied.[10] Even today, there is no mechanism in place to verify whether or not lobbying meetings are even reported consistent with the Sunshine Ordinance.

---

[3] JL at pg. 267.
[4] JL at pg. 9.
[5] JL at pg. 268.
[6] *Id.*
[7] JL pg. 247.
[8] JL at pg. 248.
[9] *Id.*
[10] *Id.*

15.    During the negotiations with potential tenants at 300 Carl Karcher Way for the Anaheim-owned property, previously leased to the University of California Irvine, **Ament informed Path Labs that he had the votes on the City Council to allow them to obtain the lease, that he had already spoken to several of the other elected officials, and that the vote would be "5 to 1" in favor of Ament's proposal.** This would not be the last time that Ament is caught demonstrating a flagrant disregard for our democratic institutions.[11]

16.    Eric Morgan, a sales representative for Path Labs, was asked about the building in an interview by JLG and the negotiations taking place between Anaheim and Path Labs, and he stated, "Yeah, I mean he, you know Todd was infamous for creating back-door deals and getting money from here and there."[12] Morgan even said that when he told Ament they were considering another building in case the Anaheim building did not work out, "Todd told us, no you don't understand how this works. It's already approved like 5 to 1. We run around and talk to everyone behind the scenes."[13]

17.    In early January 2019, just as the negotiations for the Angel Stadium lease began to kick off, Sidhu began to have problems with City Manager Zapata when he began questioning Sidhu's proposed negotiations schedule that would have violated the California Environmental Quality Act. After Zapata indicated it could not be done, Ament told Zapata that he, in fact, was the one that wrote the schedule that Sidhu proposed (showing that Ament basically just writes Sidhu's speeches).[14]

18.    During that same City Council meeting, Sidhu managed to pass a resolution that completely exceeded his oral representations. In his oral remarks, Sidhu explained, "Tonight I'm asking Council colleagues to consider a one-year extension to the current Angels lease to the end of 2020." However, the resolution nullified the Angels' previous

---

[11] JL at pg. 152.
[12] Id.
[13] Id.
[14] https://voiceofoc.org/2022/05/santana-the-anaheim-city-manager-who-knew-too-much/

VERIFIED COMPLAINT FOR VIOLATION OF 1ST AMENDMENT RIGHT TO PETITION
THE GOVERNMENT FOR REDRESS OF GRIEVANCES AND PETITION FOR WRIT OF MANDAMUS

October 2018 lease termination, it also extended the team's lease termination right to Dec. 31 and reinstated the original lease, which runs until 2029.[15]

19.   Zapata stated that typically during City Council meetings an agenda item will be introduced, Sidhu would read the agenda item, and either the staff, a City Manager, department heads, or the City Attorney would shape the conversation concerning that agenda item. Zapata further indicated that at the City Council meeting, the week following the meeting concerning a $6.5 million grant to Visit Anaheim, Sidhu attempted to bypass protocol and go straight to a prepared statement. Sidhu then immediately called for a vote without allowing any further discussion or debate. When City Manager Moreno objected and asked Zapata to opine, Zapata advised the City Council to vote down the grant. A week later, Zapata was terminated.[16]

20.   In the report, Zapata points directly to people like **City Attorney Rob Fabella and City Council members during his tenure like Trevor O'Neil, Jordan Brandman, Steve Faessel and Lucille Kring — the Sidhu governing majority**.[17]

21.   Because many City Manager positions are "election sensitive," and those positions have seen significant rates of turnover within the last 2 decades, the City of Anaheim has been on a slow but steady trajectory away from a "Manager/Council" form of government to a "Strong Mayor" form of government wherein the mayor wields power and operation direction that is inconsistent with the City Charter. [18]

22.   On or about December 2019, Sidhu, Ament, and Jeff Flint invited, Trevor O'Neil, Jordan Brandman, Steven Faessel, Carrie Nocella (Liaison for Disney that would write speeches for Sidhu)[19], City Manager Jim Vanderpool, City staff members, elected officials, and individuals representing resort interests for "The Retreat." [20]

---

[15] Id.
[16] JL at pg. 177.
[17] Id.
[18] JL at pg. 152.
[19] JL at pg. 72.
[20] JL at pg. 65.

23. "The Retreat" was an annual event hosted by "the Family" that acted something like a strategic planning session and was held again in December 2020. The Retreat had an agenda that basically amounted to how to plan the best schemes that can siphon money from the City of Anaheim without being facially illegal.[21] The December 2020 agenda included a plan to siphon 10% of the tax revenues derived from Lease Payment Measurement Revenue Bonds, a plan to institute Anaheim First as a false community development program, and a streetcar project for Disney that would allow Anaheim First to bring in additional revenue.[22]

24. Anaheim First was the brainchild of Ament and basically a front for Ament, Sidhu, to gain more control over the city operations by controlling more of its funding. A key aspect of this would be to institute Anaheim First, which would bypass elected officials in the City Council by establishing Anaheim First district councils that would set priorities for and direct the vast capital and economic city resources to accomplish Ament and City Council majority goals. The plan would provide millions of dollars for secret lobbying, development and building revenue that would go directly to Ament and other trusted individuals/entities, and to fund other expansionist activities like the ones Ament and others were involved regarding the cannabis ordinances in Irvine and Anaheim.[23] Anaheim First was also a political data-mining operation used to create contact lists of politically interested residents while using the operation to dilute the power of the political minority.[24]

\ \

\ \

\ \

\ \

\ \

---

[21] JL at pg. 71.
[22] JL at pg. 71.
[23] Id.
[24] JL at pg. 306.

     **b. Ament and other members of "the Family" used their personal companies, Anaheim Chamber, Anaheim First (owned by Anaheim Chamber), Anaheim Chamber PAC to conceal and manipulate the flow of funds from the City of Anaheim to enrich specific individuals and businesses.**

25. By June 4, 2019, Sidhu managed to get the Council to approve spending $425,000 of public funds on a no-bid contract with the Chamber for "business development" in the City of Anaheim.[25] There was never any meaningful opposition to Sidhu or Ament, debate or discussion of the issues, nor direct dissent (as Zapata learned) from the other members of the City Council.[26] When asked about the no-bid contract decision, the former Director of Economic Development, **John Woodhead, was quoted as saying, "Yes, more so, and [Sidhu] had a council majority that for me was very shocking how readily they went along with him." John Woodhead elaborated on how he would express his dismay to the other Councilmembers, and they had remarked, "John, the votes are there, and I can't stop this."[27]**

26. Allies to Ament and Sidhu enjoyed preferred status in bidding for and obtaining access to Anaheim contracts and it was known that Sidhu would "push" for Anaheim city staff to use certain developers for city projects. Oftentimes, Ament and Sidhu would setup meetings with City officials and Staff with these developers.

     **c. Ament regularly directed, conspired, and colluded with elected officials of the Anaheim City Council to improperly sway municipal decisions solely to the benefit of individuals that have contributed to his personal finances or to the campaigns of those in "the Family."**

27. Ament was not concerned with who was aware of his business dealings or with whom his personal and financial interests lie. Ament was handsomely compensated by

---

[25] JL at pg. 207.
[26] JL at pgs. 207-208.
[27] JL at pg. 208.

several different developers while attempting to obtain favorable outcomes on their proposals to the City of Anaheim, while simultaneously serving as the President and CEO of the Anaheim Chamber.[28]

28.     Joanna Sosa, Director of Membership Services at the Chamber, stated that she had heard about Ament's father being the bookkeeper for the Chamber of Commerce and that he "cooked the books for Todd." She indicated that it was reported that Ament treated his father very harshly and was not nice to him. She said that Ament's father seemed like a nice man, but there was a lot of talk about inappropriate accounting taking place. Sosa also claimed that Ament would send her to obscure places such as Pechanga Casino to try and get Chamber memberships. She stated that if anyone was conducting business in the City, even if it was temporary, such as a movie film shoot, Ament would send her to those locations to get "memberships."[29]

29.     Sosa believed it became problematic because everything that was promised to these small businesses joining the Chamber never happened. They would be promised ribbon-cutting and events such as those, but it seemed that all of the attention from the Chamber was devoted to a select group of large businesses such as Disney, Yellow Cab, and the Angels.[30]

30.     Ament is not registered as a lobbyist in Anaheim, or the State of California.[31]

31.     Considering this information, Ament was essentially dipping into both ends by setting up lobbying fees from developers and "business development" fees from Anaheim. This is how Ament formed and maintained his "cabal" or "the Family." Ament was able to siphon off significant sums of money from Anaheim in the form of grants and contract awards with just enough obfuscation to keep so many other City Staff ensnared within their crony framework.

---

[28] JL at pg. 100.
[29] JL at pg. 164.
[30] JL at pgs. 164-165.
[31] Id.

32.     Ament commonly toured around Anaheim "soliciting business" for Anaheim Chamber that essentially amounted to trolling for handouts. A local car dealer attempted to obtain information concerning a lot that they wanted to develop for a car dealership. The dealer believed that he was contacted by Ament who essentially just demanded money in raising funds for the Mayor Sidhu's Prayor Breakfast event.[32]

33.     Ament is the "hub" relating to communicating to various elected officials to line up a favorable vote for certain development and projects the City of Anaheim has under consideration. Essentially, Ament acts as an unlicensed lobbyist by conducting unlawful serial "meetings" (as defined under the California Brown Act) intended to account for votes not yet taken.[33] Ament's actions made it clear that if you didn't contribute to Sidhu's campaign (or PAC under their control), or make a sizeable contribution to the Anaheim Chamber, then he would be more than willing to provide assistance to the opposition.

### d. The FBI's Criminal Investigation into Ament Begins

34.     The FBI's investigation began in April 2018 in the City of Irvine and was focused on claims of bribery and corruption of City Council Members facilitated by Melahat Rafiei in connection with a cannabis proposal and a pre-drafted ordinance.[34] It came to the City of Anaheim through Melahat Rafiei's practice of cannabis companies access to drafts of ordinances and her alleged influence on Anaheim City Staff and the City Council.[35]

35.     In October 2019, the FBI arrested Rafiei related to the City of Irvine bribery case. She agreed to cooperate and advised that the Anaheim Chamber was a lobbying organization that writes and introduces policy to the Anaheim City Council. She also confirmed that her cannabis client had spent $220,000, which was funneled through the Anaheim Chamber to Ament and possibly Anaheim City elected officials.[36]

---

[32] JL at pg. 144.
[33] JL at pg. 245.
[34] JL at pg. 37.
[35] *Id*.
[36] JL at pg. 37.

36.     At the end of November 2020, the FBI's investigation managed to intercept calls revealing that Ament, and a close group of confidants were planning a "Retreat" for what they characterized as the "Cabal," "Family Members Only," or the "Family."[37] The discussion went into great detail assessing who to invite and who to exclude as well as the rationale.[38] There was a candid description of each Councilmember's allegiances and concerns.[39] The implication and assertion made in the affidavit by the FBI Agent was that unelected individuals were influencing and manipulating City elected officials with reminders of previous and future campaign support or positions on the City Council such as Mayor Pro Tem.[40]

37.     Results of the federal investigation were detailed in the complaint filed by the FBI in the Ament Case, which heavily suggested the existence of a "*cabal*" of individuals that were united in close relation and purpose, with a collectively adopted common aim to promote their personal, private, political, and financial interests, "while acting like a shadow government." [41]

38.     Evidence put forth in the FBI Criminal Complaint alleges that Ament exerted such significant influence over the City Council of Anaheim that he was able to "get" officials that would obey and support his agenda elected, summon certain officials whenever he liked, "give" away the position of Mayor Pro Tem as a sort of obedience chip from time to time, and even refer to his shadowy cohort as a "cabal" and a "family."[42]

**B.  On July 31, 2023, JL Group Publicly Released Their Investigative Report re: Undue Influence in Anaheim City Council Decisions Between 2012 and 2023**

39.     On July 15, 2022, Anaheim posted a request for investigative services to undertake an independent investigation into potential political corruption in the City of Anaheim. The request was based on Anaheim City Council action, predicated by an FBI

---

[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] JL at pg. 6.
[42] JL at pg. 37

investigation that was made public on May 16, 2022, concerning Ament, a criminal complaint alleging false statements to a financial institution involving mortgage fraud.[43]

40.    The Scope of Investigation consisted of conducting a forensic audit of campaign contributions and expenditures over the last 10 years and comparing individuals and entities that donated with the awarding of City contracts or agreements.[44] The purpose was to determine whether there were any issues of political undue influence, otherwise known as "pay to play."[45]

## C. SIDHU AND AMENT EXERCISE CONTROL OVER THE ANAHEIM CITY COUNSEL IN DENYING PLAINTIFF'S APPLICATION

### a. Mr. Bahu Files for a Conditional Use Permit on October 23, 2015

41.    Mr. Bahu filed his application for the conditional use permit (hereinafter the "Application" or "Mr. Bahu's Application") to rebuild a gasoline distribution station his family has owned since 1967. The station was torn down in 2003 when Arco sold the property to Mr. Bahu and in the process needed to perform an environmental clean-up due to contamination originating from another gasoline station a few blocks away. A few years later, Mr. Bahu sought to re-establish his father's business by rebuilding the station. However, Mr. Bahu ran into several obstacles that needed to be overcome prior to approval.[46]

42.    Because the City of Anaheim widened La Palma Avenue and Imperial Highway in the late 1990s, the access rights to his property were inadvertently altered through a change in the placement of the proximity of the bus station to the ingress driveways.[47] Mr. Bahu received a letter on October 28, 1999 from Natalie Meeks, then Director of the City of Anaheim Public Works Department, indicating that Anaheim would reconstruct the driveways as part of the project.[48]

---

[43] JL at pg. 6.
[44] JL at pg. 10-11.
[45] JL at pg. 6.
[46] JL at pg. 118
[47] *Id.*
[48] JL at pg. 120.

43.     At some point following the street widening, Anaheim failed to reconstruct both driveways. Anaheim paved over one of Mr. Bahu's driveways on La Palma Avenue and replaced it with a solid curb line.[49] Mr. Bahu went to City Hall in July 2019 to find out why one of his driveways was removed and the city employee he spoke to denied it.[50] In a later meeting with Mr. Ted White from the Planning Department, Mr. Bahu eventually determined that the driveway had been paved over between 2007 and 2008 via satellite imagery.[51] Believing the driveway was likely a lost-cause, Mr. Bahu decided to move ahead with accommodating the City Council's seemingly endless list of requirements to hopefully develop the property in a timely manner.

44.     Between October 23, 2015, and August 30, 2018, five separate traffic reviews were conducted regarding trip generation, right-of-way, and peak-hour trips. Gas contracts were negotiated to accommodate smaller gas transportation vehicles to cut down on traffic congestion issues within the city. Furthermore, Tesoro Fuels fleet vehicles coming to refill the station would refill the station overnight, further alleviating any possible traffic and safety issues associated with their operation.[52]

45.     On March 18, 2019, the Planning Commission put out a Public Notice regarding Bahu's project and the upcoming Planning Commission Meeting to take public comment on the Application.[53]

46.     On April 1, 2019, the Planning Commission met to discuss the Application and approved the Application as CUP #2015-05835, Variance #2017-05091, and Public Conveyance of Necessity # 2019-00144. The Planning Commission subsequently approved the project to move forward with construction.[54]

47.     On or about April 1, 2019, Edgar Hampton, then President of the Anaheim Police Association, sent a letter to the Planning Commission, opposing Mr. Bahu's project

---

[49] Id.
[50] Id.
[51] Id.
[52] JL at pg. 127.
[53] JL at 126.
[54] Id.

due to "public safety concerns" that he felt had not been addressed and included a document that showed the traffic accidents for that intersection for the past year.

48.     There has never been another situation where the Anaheim Police Association was consulted to provide police department records for a planning department issue.

49.     On April 2, 2019, Mr. Bahu received a letter from the Planning Department that the Application had been approved.[55]

50.     On or about April 4, Navaz Malik (hereinafter "Malik"), an interested 3rd party known to do business with Sidhu and Ament, submitted a request for appeal of the Planning Commission decision regarding Mr. Bahu's Application.[56] The purported basis for the request for appeal was due to safety concerns surrounding the site, the sale of alcohol, and traffic congestion.

51.     On or about April 10, 2019, Cal City Corp submitted a request for appeal of the Planning Commission decision regarding Mr. Bahu's project.[57] Cal City Corp works closely as business partners with Malik on several projects and investments together.[58]

52.     On or about April 2019, Dr. John Bollinger from the Mentor Group submitted a document outlining his rationale to overturn the Planning Commission's approval of Mr. Bahu's Application.[59]

53.     A notice of a Public Hearing on June 4, 2019, to hear the appeal of the Planning Commission's approval of Mr. Bahu's Application was published.[60]

**b. <u>Mayor Sidhu Became Personally Involved in Mr. Bahu's Application</u>**

54.     It is suspiciously uncommon for elected officials to be directly involved in the determination of applications for conditional use permits concerning gasoline distribution stations.

---

[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] JL at 128.
[59] *See* JL at pg. 127.
[60] JL at pg. 126.

55.     On or about December 2018, Mr. Bahu was told by City Planner Lucita Tong that Sidhu was in the Planning department with Ament and City Councilmember Trevor O'Neal discussing Mr. Bahu's Application.[61]

56.     Lucita Tong informed Mr. Bahu as such and that he would likely need to hire a consultant "for help," and that person should be Curt Pringle (hereinafter "Mr. Pringle"), the former Mayor of Anaheim.[62]

57.     After meeting with Mr. Pringle, Mr. Bahu became dismayed at the response he was given by Mr. Pringle.

58.     Mr. Pringle suggested that Mr. Bahu hire Grant Henninger for guidance and representation. Grant was a previous commissioner on the Planning Commission, a prior candidate for City Council, and is owner of the planning consulting firm, Mobius Planning.

### c. Mr. Bahu Feels Compelled to Attempt to Hire an Insider

59.     After acquiescing to hiring Grant Henninger in 2019, Mr. Bahn asked Henninger to discover the reasons for the Planning Commission's delay. Henninger expressed being surprised by the number of obstacles facing Application, given how common the variances requested were and how they were often and easily granted in the prior term when he was on the Commission.[63]

60.     Henninger went and interviewed each official of the City Council that would agree to meet prior to the City Council rendering a decision on Mr. Bahu's Application.[64]

61.     Henninger met with Jordan Brandman during a meeting prior to the initial decision with an optimistic mind, having had experience working with him on previous campaigns for City Council in 2012, 2016, and 2018. Henninger said that Jordan told him that "to get [Jordan's] vote, we had to get the mayor's vote, and [Jordan] was unwilling to vote against the mayor."[65]

---

[61] JL at pg. 122.
[62] Id.
[63] JL at pg. 123.
[64] Id.
[65] Id.

62.     Henninger also specifically stated, "It was interesting how the mayor would come out with his scripts, and after listening to public comments and the staff reports, he would have a prepared script that clearly showed that he was not listening to any public comment."[66]

### d. **Ament Attempts to Proposition Mr. Bahu's family.**

63.     Sometime in 2018, Ament contacted Mr. Bahu's sister, May Bahu, and vaguely invited her to participate in a "*quid pro quo*" transaction.

64.     May Bahu was contacted by Ament via text who kept messaging her vague messages like, "Do you need help [with the city]?" May did not understand at the time that Ament was insinuating that he could fix the "snag" they were facing with regard to the "appeal" that was lodged against their Application until he finally spoke to Mr. Bahu.[67]

65.     Ament gave Mr. Bahu an amount that he would charge to help him with his Application by asking for "fifty grand," but Mr. Bahu internally scoffed at this request. Mr. Bahu had no reason to believe that Ament had the ability to move the process along any better than he had for himself.[68] Ament told Mr. Bahu in response to his refusal to his offer that "he is going to need help" because "there is some opposition."[69]

66.     Not only did Mr. Bahu also think the price wasn't realistic considering the costs he incurred for consultants in the past, but Mr. Bahu also thought the idea of "opposition" seemed absurd considering the outpouring of support the project had in the community.[70]

67.     At the time, Mr. Bahu didn't think Ament was capable of assisting with the Application, nor did Mr. Bahu understand that Ament was insinuating; for the right price, Ament could convince the City Council to drop any further "issues" they had with the

---

[66] *Id.*
[67] JL at pg. 124
[68] *Id*.
[69] JL at pg. 125.
[70] *Id*.

VERIFIED COMPLAINT FOR VIOLATION OF 1ST AMENDMENT RIGHT TO PETITION
THE GOVERNMENT FOR REDRESS OF GRIEVANCES AND PETITION FOR WRIT OF MANDAMUS

granting the Application. Consequently, Mr. Bahu didn't take Ament's messages seriously.[71]

### e. "The Family" Refuses to Hear Reason

68.     Getting desperate with the June 4, 2019, appeal date looming, Mr. Bahu decided to call Ament again to see if he knew anything about his Application. In doing so, Ament informed him, "You're screwed." Mr. Bahu responded, "How do you know I'm screwed? So, there is no amount of money at this point?" Ament retorted, "No, A year ago when I talked to you, yes. If you would have hired me a year ago, you would be fine."[72]

69.     Several weeks prior to the hearing in June 2019, Mr. Bahu got in touch with his friend who was the President Taps Restaurant to facilitate contact with Carrie Nocella from Disney. Bahu called Nocella asking for help with his Application issues and her response was, "I really like your buddy Chris (Taps' Owner), but there is nothing I can do. It's already done."[73]

70.     A few weeks prior to the hearing in June 2019, Mr. Bahu held meetings with Steven Faessel and Lucille Kring about the Application and the appeal that was unfolding before the Council. Mr. Bahu was informed by both officials that nothing was required on his part and if the Planning Commission supported the Application, then Faessel and Kring would as well. On June 4, 2019, both officials still voted against Mr. Bahu's Application.[74]

### f. The Council's Decision is Impermissibly Biased

71.     On or about May 22, 2019, Mobius Planning submitted a rebuttal letter to the Mentor Group's arguments and supported the Planning Commission's approval of Mr. Bahu's Application.[75]

72.     Robert Lizano, a retired Field Consultant who worked for Arco and BP, where the Bahu station was one of his clients, believes that Mayor Sidhu is attempting to help

---

[71] See JL pg. 146.
[72] JL at pg. 125; JL at pg. 147
[73] JL at pg. 129.
[74] Id.
[75] JL at pg. 127.

Malik maintain an illegal monopoly.[76] It's evident that Sidhu and the other City Council members are helping Malik avoid any competition to his Shell station by Mr. Bahu because it's typical for a gas station to be either "low cents-high volume or low volume-high cents."[77] Because Malik does not have any other gas stations in competition reasonably nearby, he is able to raise his prices unreasonably high, thereby capturing both "high volume-high cents", which causes a ripple effect throughout the corridor, essentially raising prices for everyone in the area.[78]

73.     On or about May 2019, one of the former City Managers from the City of Anaheim, James Ruth, sent a letter to the City Council in support of Mr. Bahu's Application. In a portion of the letter, **Ruth states, "I have read the appeal response by Dr. John Bollinger of the Mentor Group recommending Council deny the above-mentioned application. In reviewing his recommended actions, it became obvious that his arguments opposing the project lacked substance and were basically focused more on protecting the ownership of the Shell station (across the street) from any competition."[79]**

74.     In a highly questionable and nefarious sequence of events, on June 4, 2019, the City Council of Anaheim orchestrated a sham appeal process following the Planning Commission's granting of a conditional use permit to Mr. Bahu. Within Anaheim's ranks were corrupt city officials who, in an alarming display of collusion, conspired to exploit their positions for personal gain and the advancement of favored special interest groups by overturning the Commission's approval without considering evidence from Cal Trans Department of Transportation, former City Manager James Ruth, Assistant City Attorney Pellatier, Mobius Planning, Tesoro Fuels, nor the Anaheim residents that wrote comments in support. This sham appeal, characterized by a lack of transparency, impartiality, and adherence to due process, serves as a stark illustration of the City Council's deliberate

---

[76] *See* JL at pg. 119.
[77] *Id.*
[78] *Id.*
[79] JL at pg. 127.

efforts to subvert the integrity of the decision-making process and further their own illicit agendas.[80]

75.    During the hearing, a representative from appellant Cal City Corp testified that traffic is difficult during the times of 4:00 p.m. to 5:00 p.m. when leaving his office on La Palma, and implored Anaheim officials to deny Mr. Bahu's request.[81] Cal City Corp is owned by Mohammed Aslam Dada, who is also is the registered agent of process.[82] Mr. Dada is also a close business partner and friend of Malik, the owner of the competing Shell station across from the lot Mr. Bahu owns.[83]

76.    John Bollinger also testified during the hearing.[84] His testimony centered around how much traffic he believed will be generated by placing a gas station at the plot Mr. Bahu owns.

77.    Over the course of the JLG investigation, Lori Galloway, Executive Director of the Eli Home and former City Councilmember, was asked about the Application Mr. Bahu lodged with Anaheim, and she explicitly stated, "I think they got really, totally screwed." (She confirmed that she was referencing Mr. Bahu as having gotten "screwed.")

78.    On or about June 18, 2019, the Anaheim City Council met again to vote on upholding their "June 4, 2019" decision to overturn the Planning Commission's approval of Mr. Bahu's Application.[85]

79.    On July 1, 2019, Mr. Bahu filed a request for a re-hearing with the Anaheim City Council.[86]

---

[80] *Id.*

[81] Special and Regular Meetings of June 4, 2019. City Council and Housing Authority. Docket No. 34, hearing begins on 4:10:05/8:43:39. Accessed on February 1, 2024 from https://anaheim.granicus.com/player/clip/2166?view_id=2&redirect=true&h=210fc23a88137db90838c9fc8f791381.

[82] Cal City Corporation. Statement of Information. Secretary of State Bizonline Business Search. Accessed February 1, 2024, from https://bizfileonline.sos.ca.gov/search/business.

[83] See JL at pg. 128.

[84] Special and Regular Meetings of June 4, 2019. City Council and Housing Authority. Docket No. 34, hearing begins on 4:10:05/8:43:39. Accessed on February 1, 2024 from https://anaheim.granicus.com/player/clip/2166?view_id=2&redirect=true&h=210fc23a88137db90838c9fc8f791381.

[85] JL at pg. 127.

[86] *Id.*

---

**80.**    **Assistant City Attorney Pelletier later stated in an email that she, "was not comfortable with the Council action on this project at the time, and we were concerned that Bahu was going to contend in the lawsuit that the mayor had a personal interest/bias/conflict. Fortunately, that did not happen."[87]**

81.    The vast majority of witnesses in the investigation performed by JLG commented that the decision by the City Council to overturn the Planning Commission was not motivated by actual concerns regarding the safe operation of this project and many felt is was not a fair process. It was clear that the addition of a new gas station on Bahu's property would have a significant impact on the profitability of Malik's operation at the Shell station and it appeared that this played a significant role in Mayor Sidhu's opposition to Bahu's project.[88]

### g.  JLG Conducted an Independent Study

82.    JLG went to the location of Mr. Bahu's property on the corner of La Palma Avenue and Imperial Highway to monitor the traffic at the intersection for an hour. This was conducted on a Wednesday morning at 11:00 a.m. and during non-peak traffic volume.[89]

83.    While monitoring traffic, the traffic signal for northbound traffic on Imperial Highway has no U-turn sign for the left turn pocket to westbound La Palma Avenue. For vehicles that turn left onto westbound La Palma Avenue, there is a traffic signal west of the Shell station with a left turn pocket to enter a commercial shopping/restaurant area on the southside of La Palma Avenue. This left turn pocket also has a no U-turn sign attached to it. In essence, for vehicles that are traveling north on Imperial Highway and want to utilize the Shell station on the southwest corner of Imperial Highway and La Palma Avenue, the only legal method would be to turn left onto westbound La Palma Avenue, then turn left into the

---

[87] JL at pg. 142.
[88] JL at 142.
[89] *Id.*

shopping center parking lot, manipulate a U-turn in the parking lot, and exit back onto eastbound La Palma in order to turn into the Shell station.[90]

84.    Indeed, while JLG was monitoring the intersection, six vehicles were observed making illegal U-turns at Imperial Highway and La Palma Avenue. Five of those vehicles entered the Shell station after making the illegal U-turn. Five vehicles were also observed making an illegal U-turn at the traffic light on La Palma Avenue west of Imperial Highway. Four of those vehicles entered the Shell station after making an illegal U-turn.

**h.   Anaheim's Sham Appeal Ultimately Hold's Mr. Bahu's Property in Limbo**

85.    On or about July 16, 2019, the City Council rejected Mr. Bahu's request for a re-hearing of the Application.[91]

86.    The letter submitted by Edgar Hampton by the Anaheim Police Association was found to be rescinded after Hampton was asked about it. Hampton explained that he was very uncomfortable in the situation and that he felt that it put them in a position where they could have their "reputation linked with stopping something or starting something for cronyism."[92]

87.    Former HR Director and Interim City Manager Linda Andal remarked when coming into contact with Hunter and Hampton during their meeting, "We are going in a different direction." She explained that to mean that it appeared to her that it came down to whom you knew when these decisions where being made than what you knew.[93]

88.    Throughout the process between 2015 and 2019, Mr. Bahu spent more than $300,000 on city staff man-hours, consultants, architects, attorneys, and private investigators to capitulate to the demands of the ANAHEIM City Council.

---

[90] *Id.*
[91] JL at 128.
[92] JL at 129.
[93] JL at 130.

## V.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### 42 U.S.C.§1983 – Denial of Right to Petition

### (Against ANAHEIM Only)

93.     PLAINTIFF hereby re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

94.     PLAINTIFF is informed and believes, and thereon alleges that ANAHEIM deprived PLAINTIFF of his 1st Amendment Right to Petition and acted by way of custom and/or policy under the color of state law in the following ways:

    a.  ANAHEIM'S elected officials, such as former Mayor Harry Sidhu, Former City Council Members Trevor O'Neill, Lucille Kring, Stephen Faessel, Jordan Brandman, and many other members of the City Staff conducted and contributed to a shadow organization that acted pursuant to an expressly adopted or longstanding custom that controlled the votes of the City Council majority;

    a.  Elected Officials, including former Mayor Sidhu, Trevor O'Neill, Lucille Kring, Stephen Faessel, and Jordan Brandman, acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of ANAHEIM when they frequently altered their voting decisions in accordance with the directives issued by AMENT and/or former Mayor Harry Sidhu;

    b.  Elected Official former Mayor Harry Sidhu provided direction and assistance to Defendant AMENT in filing and conducting the appeal against Mr. Bahu's Application;

    c.  The Defendant, ANAHEIM, violated PLAINTIFF's federal right to petition the government for the redress of grievances by systematically denying PLAINTIFF access to a meaningful appeal. ANAHEIM exhibited a deliberate lack of intent to impartially evaluate the Planning Commission's findings by disregarding the traffic reports provided to the Council, instead choosing to

depend solely on the testimony of the 'Family' and their majority vote. This decision by ANAHEIM, which denied Mr. Bahu a substantive opportunity for appeal, culminated in an arbitrary and capricious determination that left his judgment final without any alternative avenues for relief;

95.   ANAHEIM'S official widespread or longstanding practice or custom actually and proximately caused the deprivation of PLAINTIFF'S rights through former Mayor Harry Sidhu, Trevor O'Neill, Lucille Kring, Stephen Faessel, Jordan Brandman, and other City Staff; that is, that ANAHEIM'S official policy or widespread or longstanding practice or custom is so closely related to the deprivation of PLAINTIFF'S rights as to be the moving force that caused the ultimate injury.

96.   Therefore, PLAINTIFF has incurred, and will in the future incur, lost profits, special damages, and general damages in an amount to be determined by the trier of fact.

## SECOND CAUSE OF ACTION

### 42 U.S.C.§1985(3)– Conspiracy to Deny Private Citizen of Right to Petition

### (Against Defendants TODD AMENT)

97.   PLAINTIFF hereby re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

98.   PLAINTIFF is informed and believes, and therefore alleges, that AMENT entered into a conspiratorial agreement with ANAHEIM city staff and elected officials, specifically former Mayor Sidhu and his puppet City Council members, Trevor O'Neill, Lucille Kring, Stephen Faessel, and Jordan Brandman to vote as per his instructions, irrespective of any other testimony or evidence in opposition, with the aim of unlawfully denying Mr. Bahu's Application for a conditional use permit.

99.   AMENT acted in furtherance of the conspiracy by propositioning both May and Isa Bahu for funds to "help" pass Anaheim's appeal that he also helped orchestrate. AMENT also acted in furtherance of the conspiracy by engaging in activities to secure votes prior to votes taking place, leveraging his influence within the City infrastructure to maintain a level of authority and order among the City Council members, and by directing

and conducting false appeals in conjunction with other 3rd parties beneficially interested in the denial of Mr. Bahu's Application. AMENT also conspired with other non-beneficially interested 3rd parties in lodging false appeals to Mr. Bahu's Application, who previously and contemporaneously acted in concert with AMENT and ANAHEIM City Council members to manipulate the award of other unrelated ANAHEIM City contracts.

100.   Elected officials on the City Council conducted and contributed to a shadow organization that controlled the votes of the City Council majority, also rendering the minority perpetually ineffectual;

101.   Elected Officials such as Mayor Sidhu, Trevor O'Neill, Lucille Kring, Stephen Faessel, Jordan Brandman, and many others among City Staff, worked to secure votes according curated to bolster insider interests; and

102.   Anaheim did not conduct a Constitutionally sound appeal of the decision to deny Mr. Bahu a conditional use permit after its approval by the Planning Commission.

103.   Defendant Anaheim denied PLAINTIFF the right to petition the government for redress of grievances by denying PLAINTIFF access to any meaningful appeal. Anaheim had no intention of evaluating the findings of the Planning Commission, instead, opting to rely on the testimony of the "Family" and their majority vote. Anaheim's decision to deny Mr. Bahu a meaningful appeal resulted in an arbitrary and capricious decision that rendered his judgment final without any other avenue for relief.

104.   As a direct and proximate cause of ANAHEIM's conduct, PLAINTIFF sustained serious injuries and harm. Therefore, thereof, PLAINTIFF has incurred, and will in the future incur, lost profits, special damages, and general damages in an amount to be determined by the trier of fact.

## **THIRD CAUSE OF ACTION**

## **PETITION FOR WRIT OF MANDAMUS PURSUANT TO C.C.P. § 1085.**

### **(Violations of California Government Code §§ 65010 & 54950 et. seq.)**

### **(Against ANAHEIM Only)**

105.   PLAINTIFF hereby re-alleges and incorporates by reference each preceding

paragraph as though fully set forth herein.

106. PLAINTIFF is beneficially interested in the outcome of writ as a citizen of the County of Orange and resident of the City of Anaheim and owner of the property subject to the Conditional Use Permit Application filed on October 23, 2015.

107. Respondent has a ministerial (non-discretionary) duty to follow the law and is breaking it by having denied PLAINTIFF a fair and meaningful appeal that resulted in a decision that was not supported by the findings and was essentially arbitrary and capricious. There are no other plain, speedy and adequate alternative remedies accessible to PLAINTIFF remaining at law.

108. As a direct and proximate cause of ANAHEIM's conduct, PLAINTIFF sustained serious injuries and harm. Therefore, thereof, PLAINTIFF has incurred, and will in the future incur, lost profits, special damages, and general damages in an amount to be determined by the trier of fact.

## **PRAYER FOR RELIEF**

Wherefore, PLAINTIFF prays for judgement against Defendants, and each of them as follows:

1. For general damages according to proof;

2. For lost profits, past and future, according to proof;

3. For pre- and post-judgment interest;

4. For costs of suit herein incurred; and

5. For attorney's fees pursuant to 42 U.S.C. Section 1983

6. For such other further relief, the Court deems just and proper.


DATED: April 26, 2024                    **BARIC LAW, P.C.**


By: _____

Steven D. Baric, Esq.
Attorneys for Plaintiff,
ISA BAHU

## **JURY DEMAND**

PLAINTIFF hereby demands a trial by jury on all claims so triable.


DATED: April 26, 2024                    **BARIC LAW, P.C.**


                                    By:  _____

                                         Steven D. Baric, Esq.
                                         Attorneys for Plaintiff,
                                         ISA BAHU

**<u>VERIFICATION</u>**

I, the undersigned, certify and declare that I have read the foregoing: VERIFIED COMPLAINT FOR VIOLATION OF 1ST AMENDMENT RIGHT TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES AND PETITION FOR WRIT OF MANDAMUS AND DECLARATORY RELIEF (CCP§1085) FOR VIOLATIONS OF CALIFORNIA GOV CODE § 65010 AND THE RALPH M. BROWN ACT (CALIFORNIA GOVERNMENT CODE §54960 et seq.) and know its contents.

I, ISA BAHU, am a party to this action and I make this for that reason.

The matters stated in the document described above are true of my own knowledge and belief, except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

Executed on April 26, 2024, at Newport Beach, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*Isa Bahu*
Isa Bahu (Apr 26, 2024 14:40 PDT)
Isa Bahu

VERIFIED COMPLAINT FOR VIOLATION OF 1ST AMENDMENT RIGHT TO PETITION
THE GOVERNMENT FOR REDRESS OF GRIEVANCES AND PETITION FOR WRIT OF MANDAMUS